TAYLOR OIL & GAS CO. ET AL.,[1] PETITIONERS, *v.* COMMISSIONER OF INTERNAL REVENUE, RESPONDENT.

Docket No. 20168.   Promulgated February 26, 1929.

---

[1] The cases of the following petitioners, as transferees of the Taylor Oil & Gas Co., were consolidated for hearing and decision with that of the Taylor Oil & Gas Co. and are decided herewith: Robert Scott Dilworth, Docket No. 25237; Coke Emory Dilworth, Docket No. 25238; Frank R. Womack, Docket No. 25311; George Mendel Booth, Docket No. 25312; James A. Thompson, Docket No. 25313; Oscar E. Roberts, Docket No. 25314; Thomas E. Burns, Docket No. 25315; Chas. H. Burns, Docket No. 25316; J. Vernon Stiles, Docket No. 25317; Eliza Stiles, Docket No. 25318; Edmond Doak, Docket No. 25319; Howard Bland, Sr., Docket No. 25320; Steve G. Gernert, Docket No. 25321; Will R. Dulaney, Docket No. 25322; and Chas. H. Cooke, Docket No. 25343.

*George E. Shelley, Esq.,* for the petitioners.
*C. H. Curl, Esq.,* for the respondent.

## OPINION.

LOVE: Admittedly, an attempt was made to avoid the accrual of a tax to the Gas Company on the sale to the Magnolia Company. In our opinion it fell measurably short of success.

The negotiations preceding this transaction were begun some time in 1919. By December 5, 1919, all the details and preliminaries had been arranged and agreed to and nothing remained to be done to conclude the transaction except the actual and legal transfer of title. The large amount of tax to be incurred by the corporation inspired an inquiry as to the manner in which it could be at least in part legally avoided, and the method detailed in our findings of fact was pursued.

When the proposal of December 5 was made by the Magnolia Company it was addressed "to the Board of Directors of the Taylor Oil & Gas Company," a corporation then in active existence, to be consummated, it is true, only upon the dissolution of that corporation but, nevertheless, the purchase "to be considered effective just as though completed on December 15, 1919," and though it is in evidence that such proposal was not formally submitted to the board of directors until after the papers in dissolution had been filed, it is not to be assumed or believed that it was not fully known in every detail by each member thereof, and by many, if not all, of the principal stockholders of the corporation.

As promptly thereafter as the law permitted, a special meeting of stockholders was called to dissolve the corporation. At this meeting held January 16, 1920, two resolutions were adopted. The first assumed to accomplish the dissolution forthwith, in accordance with the statutes of the State of Texas in such cases made.

Those statutes in effect in 1920 provide:

Where four-fifths in interest of all the stock outstanding shall vote in favor of a dissolution at a stockholders' meeting called for that purpose on notice signed by a majority of the directors, stating time, place and object of the meeting, served personally or by mail at least thirty days next before the meeting. If, at said meeting, four-fifths in interest of all the stockholders of said company shall consent in writing to the dissolution of the corporation, such written consent, together with a list of the directors and officers of the company, giving postoffice address and place of residence of each, certified by the president and secretary and treasurer as a true and correct action of the stockholders, shall be filed with the Secretary of State. (Vernon's 1925 Revision Texas Civil Statutes, Art. 1205, p. 242.)

Article 1206 is as follows:

Upon the dissolution of any corporation, unless a receiver is appointed by some court of competent jurisdiction, the president and directors or managers of the affairs of the corporation at the time of its dissolution, by whatever name they may be known in law, shall be trustees of the creditors and stockholders of such corporation, with full power to settle the affairs, collect the outstanding debts, and divide the moneys and other property among the stockholders after paying the debts due and owing by such corporation at the time of its dissolution, as far as such money and property will enable them after paying all just and reasonable expenses; and to this end, and for this purpose they may in the name of such corporation, sell, convey and transfer all real and personal property belonging to such company, collect all debts, compromise controversies, maintain or defend judicial proceedings, and to exercise the full power and authority of said company over such assets and properties; and the existence of every corporation may be continued for three years after its dissolution from whatever cause for the purpose of enabling those charged with the duty to settle up its affairs; and, in case a receiver is appointed by a court for this purpose, the existence of such corporation may be continued by the courts so long as in its discretion it is necessary to suitably settle up the affairs of such corporation; provided that the dissolution of a corporation shall not operate to abate, nor be construed as abating any pending suit in which such corporation is a defendant, but such suit shall continue against such corporation and judgment shall be rendered as though the same was not dissolved, and in case no receiver has been appointed for said corporation, suit may be instituted on any claim, against said corporation, as though the same had not been dissolved, and service of process may be obtained on the president, directors, general manager, trustee, assignee, or other person in charge of the aff[a]irs of the corporation at the time it was dissolved by whatever name they may be known in law, and judgment may be rendered as though the corporation had not been dissolved and the assets of said corporation shall be liable for the payment of such judgment just as if said corporation had not been dissolved. (Id. Art. 1206, p. 245.)

These statutes provide completely for the dissolution of a corporation and the liquidation of its affairs, and the petitioners now rely almost

wholly upon such statutes and the action taken under them by the stockholders of the Gas Company, and quote as a precedent the Board's finding in the case of the *Gonzolus Creek Oil Co.*, 12 B. T. A. 310, hereinafter referred to.

But the stockholders of the Gas Company were not then content to rely solely upon the statutory provisions and the powers and authority conferred therein upon its president and directors as "trustees of the creditors and stockholders of such corporation, with full power to settle the affairs, collect the outstanding debts, and divide the moneys and other property among the stockholders after paying the debts due and owing by such corporation at the time of its dissolution  *  *  * and to this end, and for this purpose they may *in the name of such corporation*, sell, convey and transfer all real and personal property *belonging* to such company.  *  *  * "

Although we are of the opinion that the language of this statute disposes adversely of the petitioners' contention that by virtue of it the legal title to all of the property of the corporation passed automatically and at once to the president and directors of the corporation as trustees for its creditors and stockholders, any doubt that might have remained is settled and all ambiguity has been removed by the action of the stockholders themselves when at their meeting of January 16, 1920, they passed their second resolution wherein (not relying wholly upon the wording of the statute to confer, beyond question, the necessary powers) they said:

Whereas, we, the stockholders of the said Taylor Oil & Gas Company, desire that some one shall be authorized to close up the affairs of said corporation, now therefore, be it resolved by the stockholders of said Taylor Oil & Gas Company in session, that the Board of Directors of said Taylor Oil & Gas Company shall act as *liquidating Trustees for this Corporation*, and that the President and the Directors of this Corporation at this time shall be the Trustees of the Creditors and the stockholders of this corporation with full power to settle the affairs, collect the outstanding debts and divide the monies and other property *of this Corporation* among its stockholders, after paying the debts due and owing by this Corporation at the time of the dissolution of the same; and to this end and for this purpose, they may *in the name of said Taylor Oil & Gas Company*, sell, convey and transfer all real and personal property *belonging to said Company*,  *  *  * and exercise the full power and authority of said Company over all *its* assets and properties. And being expressly authorized and empowered to do any and every act or thing necessary to convert *the assets and properties of said Corporation into cash*,  *  *  *. (Italics supplied.)

Not only do we find all through the statute and the resolutions of the stockholders themselves the tacit recognition and admission that all the property of the corporation remained its property after dissolution until all its debts had been paid and the remaining assets (in whatever form) divided among the stockholders by the trustees created by statute, for their benefit, but we have a direct and undis-

puted record of the specific appointment by the stockholders, of the board of directors " as liquidating Trustees," not for themselves but *" for this Corporation."*

The deed, a certified copy of which is in evidence, discloses that it was executed on January 26, 1920, by all seven members of the board of directors so appointed, each signing individually as " Trustee," and that it conveys " oil wells and equipment, tanks, casing, derricks and all other materials of every description " (with one certain exception), explicitly " belonging to said *Taylor Oil & Gas Company.* * * * " (Italics supplied.)

The property of the Gas Company continued to be its property until there was a transfer or distribution by the corporation or its liquidating trustees to the stockholders or some one else. *S. D. Sutliff*, 4 B. T. A. 1068. No transfer or distribution of the corporate assets to the stockholders prior to the sale thereof to the Magnolia Company has been established. The resolutions referred to did not effectuate a distribution to the stockholders. In the light of the undisputed facts we hold that these petitioners can not prevail in their claim that they did not act, in any sense or in any way, in the capacity of trustees for the corporation, but that they acted solely as trustees for its creditors and stockholders.

But if this be not sufficient, we revert to the case of *Gonzolus Creek Oil Co.*, cited by the attorney for these petitioners in their support, and we find no comfort for them there.

The issue in that case was entirely different from that under discussion. There the sole question was whether, in the circumstances surrounding it, those petitioners, together with the stockholders of that dissolved Texas corporation, constituted " an association," and we found that they did not. Here the question is whether a sale of the property of the corporation (the proposal and specific offer for such sale having been definitely made to the board of directors of the corporation before its dissolution, but the sale having been consummated after the filing of the necessary certificates of dissolution with the Secretary of State of the State of Texas within the three-year period after dissolution allowed by law " for the purpose of enabling those charged with the duty to settle up its affairs ") was in fact and in law a sale by such corporation or by its creditors and stockholders through their trustees, and we hold that it was a sale by the corporation.

Nor do we find any difficulty in the light of our decision in the *Gonzolus Creek Oil Co.* case, in so finding and holding because, as we have shown above, the question at issue and determined in each instance is of a wholly different nature under circumstances entirely dissimilar.

But in the discussion of the earlier case, we found occasion to cite and quote *Moody-Hormann-Boelhauwe* v. *Clinton Wire Cloth Co.* (C. C. A.), 246 Fed. 653.

Here again the circumstances differ, the issue being whether the dissolution of a Texas corporation was, under certain conditions, an act of bankruptcy, and the court held in that case that it was such an act. But in reaching this conclusion the court said:

We do not think that there is any merit in the suggestion that the transaction alleged was one by the corporation's stockholders, and was not one by the corporation, because not effected by the officers or agents of the corporation having authority to bind it. An effect of the statute is to make the corporation's stockholders *the agency* by which a conveyance or transfer of its property and an appropriation of it to raise funds to pay its debts, share and share alike, are accomplished. *The transfer was as effectually that of the corporation as it would have been if made in the name of the corporation, by its officers or agents ordinarily vested with authority to take such action in its behalf.* (Italics supplied.)

This is an essential part of the reasoning by which the court arrived at the conclusion that the dissolution was an act of bankruptcy *on the part of the corporation*, and since the court's decision is based on circumstances and conditions identical with those under consideration in the case before us, it is applicable here.

The respondent introduced in evidence a paper which purports to be the original page 104 from the ledger of the Gas Company containing an account, from December 15, 1919, with the Magnolia Company. The ledger is not a book of original entry and consequently many of the entries contained on this page are "blind" in that they convey no information regarding the nature and purpose of the amounts entered, beyond posting references to either the cash book or journal, neither of which books is in evidence. Such inferences as may properly be drawn from this ledger page do not, however, support the contention of the petitioners that this account was nothing more than a "memorandum." The internal evidence contained in the entries in the sheet indicates that it is, almost beyond peradventure, an integral and necessary part of the bookkeeping system of the Gas Company and that without it and the entries contained in it, the books of account of that corporation would be "out of balance," an accounting condition which negatives completely the contention that this account was a "memorandum" only. The conclusion to be drawn from such inferences, so far as they may be held to warrant any conclusion at all, is that at the date of the dissolution the Gas Company was by its own books admittedly indebted to the Magnolia Company in an amount undeterminable from the record, for certain runs of oil, less the expenses thereof, dating from December 15, 1919. Such evidence is not of great im-

portance, but it shows that in addition to the "unsettled claim of the Government for income taxes" admitted by the witness, Mantor, there was at least this other debt to the Magnolia Company at the date of dissolution, though by reason of the blind nature of the entries there is no disproof of the contention of the attorney for the petitioners, "that the proceeds of said runs were never paid by the Taylor Oil & Gas Company to the Magnolia Petroleum Company," nor is there, on the other hand, any proof of the accuracy of that statement beyond the bookkeeper's testimony that the money was not paid over to the Magnolia Company "at that time,"—it rests wholly upon the conclusions reached in the petitioners' brief, for it is admitted that it was paid "when they sold the properties to the Magnolia Petroleum Company." In either case it would have no effect upon our decision, nor do any of the remaining propositions advanced on behalf of the petitioners. We therefore do not discuss them.

We have not been influenced by the fact that this case arises from an admitted and avowed attempt to escape taxation as a corporation. While, in the face of such avowal, it is the duty of this Board to look to the substance, it would be our duty as well to uphold the taxpayer in such an attempt if lawfully devised and in effect successful. We do not question the propriety of this effort, but, as we have said, we hold it unsuccessful for the several reasons that we have discussed at some length.

In conclusion, we find (1) that the sale in question was a sale by the Gas Company to the Magnolia Company; and, by stipulation, (2) that the amount of corporation tax arising from such sale and incurred by the Gas Company for which the petitioner transferees are liable, is $34,398.83; (3) that such transferees and petitioners as are known to this Board are: Robert Scott Dilworth, Gonzales, Tex.; Coke Emory Dilworth, Gonzales, Tex.; Frank R. Womack, Taylor Tex.; George Mendel Booth, Taylor, Tex.; James A. Thompson, Taylor, Tex.; Oscar E. Roberts, Taylor, Tex.; Thomas E. Burns, San Antonio, Tex.; Charles H. Burns, San Antonio, Tex.; J. Vernon Stiles, Taylor, Tex.; Eliza Stiles, Taylor, Tex.; Edmond Doak, Taylor, Tex.; Howard Bland, Sr., Taylor, Tex.; Steve G. Gernert, Taylor, Tex.; Will R. Dulaney, Houston, Tex.; and Charles H. Cooke, San Antonio, Tex.

The transferees presented no evidence, other than the notices mailed to them by the Commissioner, as to the amount of the liability of each of them. The total of the several amounts claimed by the Commissioner to be due from the petitioner transferees is $53,000, while the deficiency in respect to the tax of the Gas Company is $34,398.83.

*Judgment will be entered under Rule 50.*