*Decision will be entered under Rule 50.*

NIBLEY-MIMNAUGH LUMBER COMPANY, PETITIONER, *v.* COMMISSIONER OF INTERNAL REVENUE, RESPONDENT.

Docket No. 17527. Promulgated September 13, 1932.

*A. A. Smith, Esq.,* for the petitioner.
*Eugene Meacham, Esq.,* for the respondent.

**OPINION.**

MATTHEWS: This is a question (1) whether the gain derived from the sale of certain timber lands is taxable to the petitioner as a corporation, as respondent contends, in view of petitioner's contention that the sale was made by the stockholders through a liquidating trustee and the corporation dissolved; and (2) whether the gain was derived in 1923, when the contract of sale was executed and possession delivered to the purchaser, as petitioner contends, or in 1924, as respondent contends, when the legal title was formally conveyed.

1. The first question raised is, who was the vendor? The petitioner contends that the sale was made by petitioner's stockholders through Ravenscroft as liquidating trustee, while the respondent argues that it was made by the petitioner in its corporate capacity. We find it impossible to escape the conclusion that the petitioner as a corporation made the sale, and, as the facts supporting this conclusion are set out fully in our findings, we think it unnecessary to dwell on them here.

If the petitioner intended to dissolve and have the sale of its assets made by a liquidating trustee, it took no steps to convey to the trustee. On the contrary, as the evidence shows, every instrument from the original contract of sale to the final conveyance was executed by the petitioner as a corporation, acting through its proper officers. And, finally, dissolution of petitioner was completed only after all formalities of sale had also been completed. The fact that Ravenscroft, as liquidating trustee, also executed all the instruments does not make the sale one by the stockholders.

Even if the petitioner's intention had been carried out, it is very doubtful whether the gain would be taxable to the stockholders. *Hellebush et al., Trustees*, 24 B. T. A. 660. We hold that the contract was made by the petitioner as a corporation and any gain arising therefrom is taxable income to the petitioner corporation.

2. Before answering the second question raised we must determine whether we are to be governed by the rules of local law in deciding when taxable income is received on a sale. Ordinarily, of course, local law would determine whether a contract to convey timber lands effected a transfer when the contract was made and possession delivered or only when legal title was conveyed, but neither the petitioner nor the respondent has argued this point in his brief with respect to the law of Oregon. Moreover, we do not consider it necessary, for the purpose of deciding whether income under a Federal tax statute was derived in 1923, to decide whether under local law the sale was completed in that year. *Birdneck Realty Corporation*, 25 B. T. A. 1084, and *Dakota Creek Lumber & Shingle Co.*, 26 B. T. A. 940. Respondent in his brief points out that the Government's view of the determinants of a transfer for income-tax purposes is set out in Law Opinion 988, C. B. No. 2, p. 84 (1920), and that the rule there laid down has been subsequently accepted in other decisions of the Commissioner. The rule accepted is as follows:

No realization of gain or loss arises from a mere contract to sell real estate in the future. The sale is held to occur at the time a deed passes or at the time possession and the burdens and benefits of ownership are from a practical standpoint transferred to the buyer, whichever occurs first. Payments made prior to the sale are to be applied in reduction of cost so far as they do not exceed cost; being treated as income to the extent, if any, to which cost is exceeded.

There is no dispute upon the facts. A contract was executed by the petitioner corporation, by petitioner's liquidating trustee, and by certain of its stockholders (joined by the Grande Ronde Company as a covendor) with the Bowman-Hicks Company as purchaser on August 2, 1923, for the sale of all of petitioner's assets except cash on hand and accounts receivable. Immediately thereafter, at 4.30 p. m. on August 3, the purchaser took physical possession of the property—the right to have immediate possession of the property being expressly stated in paragraph 7 of the contract to be one of the most important considerations inducing the purchaser to enter into the contract because of the purchaser's plans for logging before the winter snows should begin—and throughout the remainder of 1923 and thereafter exercised all rights of dominion and ownership. The purchaser sawed logs and sold the lumber for its own benefit and expended, according to the testimony of several witnesses,

something like $100,000 in laying new railroad tracks, regrading and extending petitioner's railroad. It would be difficult to conceive acts more clearly indicating the purchaser's understanding that it had bought the property when the contract was signed on August 2, 1923, or, at any rate, when the stockholders had, in accordance with the contract, formally ratified the sale at their meeting on August 11, 1923. After the latter date nothing remained for the vendor except to furnish the purchaser's attorneys with satisfactory abstracts of title to the several tracts covered by the contract, which was done in 1923, and to make a formal conveyance of title by deed.

Accepting, then, the test above laid down, we think it clear that " possession and the burdens and benefits of ownership " in the instant proceeding were transferred by the petitioner in 1923, when unconditional possession was delivered to the purchaser, which thereupon and thereafter derived from the subject matter of the sale all the benefits and assumed all the burdens (1923 taxes, for instance, which were on the evidence not paid by the petitioner and presumably, therefore, were paid by the purchaser) incident to ownership. The opening words of the contract themselves show the clear intention of the parties: " That the Seller has contracted to sell and the Purchaser has contracted to buy the property set forth and described * * *."

Moreover, it will be observed that the purchase-money mortgage was made as of August 3, 1923, and the notes, although not given by the purchaser until 1924, were dated August 3, 1923, and bore interest from that date. The purchaser did not hesitate in 1923 to manufacture and sell for its own benefit lumber in a substantial amount. A substantial portion of the purchase money, $450,000 of the total $1,150,000 of the contract, passed to the vendor in 1923.

Much is made by the respondent of the forfeiture clause in paragraph 9 of the contract, by which the purchaser was allowed to cancel the contract if the vendor should be unable to give a good title to the mill site or to as much as 20,000 acres of " sound, merchantable timber," or, if the stockholders should not ratify the contract, or the vendor should be unable to give a general warranty deed. But it should be pointed out that all of these required conditions were met by the vendor before the end of 1923, so that the purchaser's obligation to purchase had become unconditional in 1923. Nor does the other major objection of the respondent carry great weight. He urges that the subsequent agreement between the parties of January 15, 1924, by which the purchase price was reduced in the amount of $66,508.07, supports his contention that no unconditional liability rested on the purchaser in 1923. We are unable to accept this view. The contract provided, in paragraph 1, expressly for such a contin

gency as arose—the inability of the vendor to give good abstracts of title to all the land conveyed—and it provided that in such case such lands should be omitted and a corresponding abatement of the purchase price allowed. No conditions of termination or forfeiture on the part of the purchaser are laid down except those already referred to under paragraph 9. Because the exact amount of the indebtedness was not finally determined in 1923, the purchaser's obligation does not on that account become conditional and contingent.

We are of the opinion that, all prerequisite conditions having been fulfilled in 1923, the purchaser was under an unconditional obligation in that year to pay the vendor the purchase price for that part of its timber lands for which the vendor had supplied good abstracts of title. The clear intent of the parties and the uncontradicted fact of the possession taken and dominion exercised over the vendor's lands by the purchaser in 1923 clearly establish a transfer for income-tax purposes in 1923. The case of *Davidson & Case Lumber Co.* v. *Motter*, 14 Fed. (2d) 137, is sufficiently similar on its facts to merit quotation here:

A contract of sale by the corporation of certain real estate on which it had operated a lumber yard was made to solvent purchasers, able to pay at any time, on November 20, 1919. At that time $10,000 was paid in cash and a contract in writing was entered into between the corporation and the purchasers, conditioned alone on the title being found satisfactory to the purchasers. Some time in the month of December, 1919, the purchasers, having examined the title, removed this condition from the contract by advising the corporation the title to the property was satisfactory to them, and the contract of sale was thus made absolute. The contract provided for the payment of the remainder of the purchase price, $100,000, on June 1, 1920, and that conveyance should be delivered by the corporation to the purchasers at this time. Also, the corporation, not being able to remove its business from the property, agreed to pay onehalf the taxes for the year 1920 as a consideration for being permitted to remain on the premises. However, the dominion, control, burdens, and benefits of the property were passed to the purchasers in the year 1919 at the time the contract of sale was made absolute. * * *

    *        *        *        *        *        *      ·  *

The question is, who owned this property in the latter days of the year 1919? As the right of the corporation to compel compliance with the terms of the contract was by the contract made dependent on the corporation delivering a good title to the purchaser, the contract remained conditional and dependent until the title had been examined and approved by the purchasers. As the corporation was notified this condition was met in the month of December, 1919, thereafter the conditional contract of sale became absolute in its terms, and any loss to the property or any benefits or advantage accruing thereto was the loss or benefit of the purchasers. To this end come not only the adjudicated cases on the question but the very reason of the thing itself. * * *

    *        *        *        *        *        *         *

As the contract for the sale of the property, fixing the terms of the sale made, the amount of the purchase price to be paid, and all other of its terms, including the present payment of $10,000, was performed in the year 1919, the amount of

profits taxable must have been determined as of that year as readily and absolutely as of the date the conveyance was delivered and the deferred payment made. I therefore find as a fact the sale of the real estate in this case, while not perfected by conveyance and full payment of the purchase price until June, 1920, was made in the year 1919, as contended by the plaintiff in this case, and that the profit made in the transaction should have been included in the income and excess profits taxes of the corporation for the year 1919.

The *Davidson* case it seems to us is on all fours with the instant proceeding and conclusive of the issue involved. If any difference exists—and it is not clear that such a difference may be inferred from the facts of the *Davidson* case, as stated—it is merely that here the amount of abatement of the agreed purchase price may not have been definitely known before the close of 1923. We have already said that we do not regard this fact as important. The rule requiring inclusion in income for a particular year of amounts undetermined at the end of that year finds sanction in a line of cases involving income of railroads under the Transportation Act, considered by this Board and the Supreme Court. *Continental Tie & Lumber Co.* v. *United States*, 286 U. S. 290. Inclusion is predicated upon the taxpayer's unconditional right to the money. Here the vendor's right to payment had ripened in 1923, and the exact amount due might reasonably have been known or ascertained in that year, as is amply shown by the amending agreement fixing that amount having been made on January 15, 1924, only a fortnight later. The full sale price therefore must be regarded as having accrued to the petitioner in 1923.

It is unnecessary to multiply citations, but it should be noted that we have followed a course similar to that of the *Davidson* case on frequent occasions. *J. T. Pittard*, 5 B. T. A. 929; *Grace Harbor Lumber Co.*, 14 B. T. A. 996; *Ohio Brass Co.*, 17 B. T. A. 1199. Cf. *Federal Development Co.*, 18 B. T. A. 971. The cases cited by respondent's counsel in his brief tend to support, for the most part, this conclusion rather than that for which he contends. The Supreme Court's decision in *Lucas* v. *North Texas Lumber Co.*, 281 U. S. 11, is clearly distinguishable from the instant case, for in that case the purchaser's notice (given in the earlier year) that it would exercise its option to purchase created, the court held, only an executory contract, since no tender of title or possession was made by the vendor until the following year. Cf. *Brunton* v. *Commissioner*, 42 Fed. (2d) 81.

We hold, therefore, that the profit from the sale was derived by the vendor in 1923.

*Judgment will be entered under Rule 50.*