NORTHWEST UTILITIES SECURITIES CORPORATION, PETITIONER, *v.* COMMISSIONER OF INTERNAL REVENUE, RESPONDENT.

Docket Nos. 54758, 59366. Promulgated January 9, 1933.

*Leland W. Scott*, Esq., for the petitioner.
*J. A. Lyons*, Esq., for the respondent.

**526**

OPINION.

LANSDON: The petitioner argues that it ceased to exist as a body corporate in 1929, in virtue of its failure to pay the state corporation tax, which omission, under the state laws, subjected its charter to forfeiture. It introduced no evidence at the hearing to establish either that its corporation tax for 1929 was not paid, or, if not, that a forfeiture of its charter rights was invoked by the state of its creation. In the absence of any evidence to support this contention, we sustain the act of the respondent in denying the loss claimed for 1929.

Petitioner contends that the conveyance in trust of its assets on May 14, 1927, amounted, in effect, to a distribution of them "in kind" to its stockholders, who thereafter sold them through the trustees. The respondent's basic contention respecting the other tax items here disputed is that the transfer of the corporation's assets to the trustees in 1927, in the circumstances, did not change its taxable status as owner of the profits from their sale, under its contract with Thompson, Ross & Company, or the earnings of the converted assets, pending their distribution to the stockholders.

The record does not support any theory of a sale made by the trustees, or that they acquired any rights in the trust corpus which they could have sold other than in accordance with the directions of the trust instrument, which they were bound to obey. It does show, however, that the corporation made a sale of its assets to Thompson, Ross & Company on March 8, 1927, and received a binding payment of $50,000 in "earnest money." This was not an option contract, as contended for by the petitioner, but an executed sale which gave the purchaser vested property rights in the assets. *Morgan* v. *Forbes*, 236 Mass. 480; 128 N. E. 792; *O'Brien* v. *Boland*, 166 Mass. 481; 44 N. E. 602; *Howe* v. *Hayward*, 108 Mass. 54; *Hunt* v. *Weir*, 100 Ind. 501. The purchaser's contingent option to rescind

did not postpone the vesting of its rights in the property. *Monarch Portland Cement Co.* v. *Washburn*, 89 Kan. 874; 133 Pac. 156. That right of election expired March 20, 1927; and after that date the contract of sale was without a condition to either party. All conditions being removed, the assets being in a deliverable condition, the property in them passed to the buyer. Sec. 8394 (Rule 1) Mason's Minn. Stats. (Conditional Sales Acts); *American Sugar Refining Co.* v. *Newnan Grocery Co.*, 284 Fed. 835; *Rhynas* v. *Keck*, 179 Ia. 422; 161 N. W. 486; *Olin Co.* v. *Lambach*, 35 Idaho 767; 209 Pac. 277.

That the stockholders intended this sale to stand is shown by their action at their meeting of May 10, 1927, when, by resolution, they directed as follows:

BE IT FURTHER RESOLVED that the proper officers of this corporation be and they hereby are authorized to carry out and perform, or cause to be carried out and performed, all of the obligations of this corporation under and pursuant to said contract of March 8th, 1927.

The board of directors entrusted that duty to the trustees, who accepted the trust and complied with the mandate. In so doing the trustees acted for and in behalf of the corporation. *Taylor Oil & Gas Co.*, 15 B. T. A. 609; *James Duggan*, 18 B. T. A. 608; and *Fred A. Hellebush*, 24 B. T. A. 660.

The cases cited in petitioner's brief are not applicable to the facts here. Several of them show a transfer of corporation assets to a trustee or stockholder, which we recognized as valid to pass title to the transferee, but in none of them was there a closed contract of sale to a third party which had intervened to prevent the passing of title to the trustees, or stockholders. Of the cases cited, the nearest approach to one in point with the situation here considered is found in *Fruit Belt Telephone Co.*, 22 B. T. A. 440, where a prior sale of the corporation's assets had been negotiated but not consummated by its officials. Thereafter, the officials sold the corporation's assets for cash, to one of the stockholders as trustee, who renewed the negotiations and sold them to the Bell Telephone Company. Inasmuch as the property was not otherwise encumbered, this Board sustained that sale. In *Iowa Bridge Co.* v. *Commissioner*, 39 Fed. (2d) 777, the issue was controlled by facts in no respect similar to these here considered. In that case the corporation had transferred construction contracts to its president, and the Board held that, to all intents and purposes, they had been completed and the profits on them earned by the corporation before the transfer. Accordingly, the Board held that such profits constituted income to the corporation. The United States Circuit Court of Appeals reversed the decision of the Board for the reason, as stated in its opinion, that the counsel for the Commissioner conceded at the hear-

ing that there was no basis for the Board's findings that the profits had been earned before the transfer.

In the case at bar we sustain the sale to Thompson, Ross & Company, as well as the subsequent transfer to the trustees. The first of these, however, passed the property rights in the assets to the purchaser as of March 8, 1927, when the deal was closed and the earnest money paid.

*Decision will be entered for the respondent.*