WHITNEY REALTY COMPANY, LTD., PETITIONER, ET AL.,[1] *v.*
COMMISSIONER OF INTERNAL REVENUE, RESPONDENT.

Docket Nos. 48192, 51719–51724, 57757–57759. Promulgated November 28, 1933.

*Ferris D. Stone, Esq., Cleveland Thurber, Esq.,* and *E. S. Reid, Jr., Esq.,* for the petitioners.
*Mason B. Leming, Esq.,* for the respondent.

[1] Proceedings of the following petitioners are consolidated herewith: Katherine D. Douglas; Adelaide McCreery Remick, Jerome H. Remick, Jr., and Union Guardian Trust Company, a Michigan Corporation, Executors under the Last Will and Testament of Jerome H. Remick, Deceased; David C. Whitney; David M. Whitney; Tracy W. McGregor; John J. Hoff; Susan M. Whitney; Grace Whitney Hoff; Katherine McGregor.

OPINION.

ADAMS: The principal question raised by these proceedings is whether the conveyance of the assets of the Continental Lumber Co. to Nathan T. Viger, as trustee, was a transfer of its assets, in complete liquidation of the lumber company, to its stockholders, so that the stockholders sustained a loss based on the difference between the fair market value of the property received and their capital investment. If the law question is decided in favor of the petitioners, a question of fact is presented as to the amount of loss sustained. We have included in our findings the facts relating to the amount of loss sustained, if any, for the reason that these facts provide an historical background for the issue of law.

The petitioners contend that there was a complete liquidation of the Continental Lumber Co. which resulted in a loss to the former stockholders; that the transfer to Viger, coupled with his declaration of trust, was a distribution in kind to the stockholders, Viger holding title as their nominee; that the procedure followed was a practical short cut to the same net result, viz., title in the trustee and beneficial ownership in the stockholders, which saved time and money and avoided the legal complications that would follow a direct distribution to the stockholders and a conveyance from each of them to the trustee. The petitioners rely particularly upon the decision of

the Board in *Central Natl. Bank, Trustee*, 25 B.T.A. 1123, as supporting their position.

The respondent contends that the transfer of the corporate assets to Viger, as trustee, falls squarely within the provisions of article 548 of Regulations 69 (Revenue Act of 1926);[1] that legislative approval has been given to the administrative interpretation of article 548 by the repeated reenactment in the same terms of the gross income provisions of the statute; that in any event petitioners have failed to prove any loss because their interest in the assets before and after the transfer was the same; and that Viger is a trustee in liquidation and the transfer to him did not constitute a distribution in kind; citing *Fred A. Hellebush et al., Trustees*, 24 B.T.A. 660.

The applicable section of the Revenue Act of 1926 is set out in the margin.[2]

Since the petitioners claim that the exchange of their shares of stock for trust certificates constituted a complete liquidation of the corporation, we have omitted that portion of the section relating to distributions in partial liquidation.

In the last analysis this issue turns upon the question of whether a distribution to the stockholders in complete liquidation results from exchanging corporate shares of stock for liquidating trust certificates. In such a case, have the stockholders realized all that they may hope to receive from their investment in the corporation, so that they can definitely and finally determine the loss sustained by each in 1927?

In *Fleckner* v. *United States Bank*, 8 Wheat. 338, a resolution was passed which required the president and cashier of the bank " to take measures to liquidate the balance due to the original plaintiffs and other banks." In the opinion the Supreme Court said:

Some criticism has been employed on the meaning of the word " liquidate ", in the resolution above stated. It is said, to mean, not a payment, but an ascertainment of the debts of the bank. We think otherwise. Its ordinary sense, as given by lexicographers, is to clear away, to lessen debts. And in common parlance, especially among merchants, to liquidate a balance, means, to pay it;

---

[1] ART. 548. *Gross income of corporation in liquidation.*—When a corporation is dissolved, its affairs are usually wound up by a receiver or trustees in dissolution. The corporate existence is continued for the purpose of liquidating the assets and paying the debts, and such receiver or trustees stand in the stead of the corporation for such purposes. (See section 282 and articles 1293 and 1294.) Any sales of property by them are to be treated as if made by the corporation for the purpose of ascertaining the gain or loss. No gain or loss is realized by a corporation from the mere distribution of its assets in kind upon dissolution, however, they may have appreciated or depreciated in value since their acquisition. (See further articles 622 and 1545.)

[2] SEC. 201. (c) Amounts distributed in complete liquidation of a corporation shall be treated as in full payment in exchange for the stock, and amounts distributed in partial liquidation of a corporation shall be treated as in part or full payment in exchange for the stock. The gain or loss to the distributee resulting from such exchange shall be determined under section 202, but shall be recognized only to the extent provided in section 203. * * *

and this, we are satisfied was the sense in which the words were used in this resolution; and, consequently, that the appropriation of this note to the payment of the debt was within the scope of the authority given to the president and cashier.

In *Richmond* v. *Irons*, 121 U.S. 27, the Supreme Court stated that " the power of the president or other officer of the bank to bind it by transactions after it was put into *liquidation* is that which results by implication from the duty to wind up and close its affairs. *That duty consists in the collection and reduction to money of the assets of the bank, and the payment of creditors equally and ratably so far as the assets prove sufficient.*" (Italics supplied.)

Similarly, the state courts have held that liquidation is the winding up of a firm's or company's affairs by getting in its assets, settling with its debtors and creditors, and appropriating the amount of profit or loss; *Rohr* v. *Stanton Trust & Savings Bank*, 245 Pac. 947; 76 Mont. 248; *Gibson* v. *American Ry. Express Co.*, 193 N.W. 274; 192 Iowa, 1126; *Lafayette Trust Co.* v. *Beggs*, 107 N.E. 644; 213 N.Y. 280.

Can it be said that the exchange of corporate certificates of stock for trust certificates of interest lessened or cleared away the debts of the corporation? Did the trust certificates give the stockholder anything materially different from what he already had, i.e., a right to share ratably in the assets after the payment of the corporate debts?

Here, there was no collection and reduction of assets into money, no settling with creditors and debtors, no appropriation of the amount of profit or loss, no distribution of assets to the stockholders, and no payment of a liquidating dividend. There was only a transfer of corporate assets to a trustee who was authorized to collect and reduce the assets to money, settle with creditors and debtors, and then distribute whatever balance remained to the former stockholders as their pro rata part of the corporate assets. This was not a distribution to the stockholders in complete liquidation of the corporation. Cf. *Wells Fargo Bank & Union Trust Co.* v. *Blair*, 26 Fed. (2d) 532. It merely transferred that duty to a trustee who acted for the corporation in discharging the statutory duty imposed upon the board of directors. (Cahill's Comp. Laws of Michigan, 1922 supp., sec. 9053 (15) to 9053 (39), inclusive). Until that duty is performed the corporation has not been completely liquidated. Cf. *Mrs. Grant Smith*, 26 B.T.A. 1178. From a taxing standpoint, the stockholder realizes his gain or sustains his loss when the final liquidation payment or dividend is received. It is at this time that a closed transaction results, from which he can determine the gain realized or the loss sustained. *Russel Wheel & Foundry Co.*, 3 B.T.A. 1168.

The petitioners cite *Central Natl. Bank, Trustee, supra,* as controlling our decision on this issue. In that case the transfer was made by the corporation to the stockholders by virtue of a liquidating dividend distributing the assets in kind. Prior to physical distribution the stockholders, as owners of undivided interests in the corporate assets, assigned their interests and requested the corporation to convey the assets, undivided, to a trustee who would act for the stockholders, individually and collectively. Apparently there were no commercial debts. We think that case is clearly distinguishable from the one before us upon the facts.

The respondent relies upon our decision in *Fred A. Hellebush et al., Trustees, supra;* affd., *Hellebush* v. *Commissioner,* 65 Fed. (2d) 902. In that case a sale of the corporation's assets was negotiated, after which the stockholders authorized the transfer of all the assets to Hellebush and others, as trustees, and the dissolution and liquidation of the corporation. The transfer was made by the officers of the corporation and, therefore, the trustees consummated the sale of the assets, paid the liabilities, distributed the proceeds to the stockholders, and the corporation was dissolved.

In holding the transactions resulted in a taxable gain to the corporation, the Board said:

The action taken at the stockholders' meeting, April 20, 1927, appointing Hellebush and Lippelman as trustees and conveying to them the corporate property, was a corporate action, and being the act of the corporation, the trustees would necessarily be responsible to and acting for the creator of the trust, even though the stockholders were beneficially interested in the property. *The trust was closed when the property was sold, the debts owing the corporation were collected, the debts of the corporation paid, and the money distributed to the stockholders. It was then that the stockholders came into possession of the proceeds of the property.* It is true, of course, that if a corporation really makes a distribution of its property in kind to its stockholders, no gain or loss therefrom results to the corporation. If, thereafter, the stockholders sell the property which they have received as a distribution in kind, any gain or loss resulting from such sale would be taxable to them and not to the corporation. But that, in our judgment, is not the situation which we have before us in this proceeding. [Italics supplied.]

Situations similar to the one arising in the *Hellebush* case, *supra,* have been considered by the Board and the courts in *Liberty Service Corp.,* 28 B.T.A. 1066; *Nace Realty Co.,* 28 B.T.A. 467; *Northwest Utilities Securities Corp.,* 27 B.T.A. 524; *S. A. MacQueen Co.,* 26 B.T.A. 1337; *Boggs-Burnam & Co.,* 26 B.T.A. 988; *Nibley-Mimnaugh Lumber Co.,* 26 B.T.A. 978; *James Duggan,* 18 B.T.A. 608; *Taylor Oil & Gas Co.,* 15 B.T.A. 609; affd., *Taylor Oil & Gas Co.* v. *Commissioner,* 47 Fed. (2d) 108; certiorari denied, 283 U.S. 862; and *Burnet* v. *Lexington Ice & Coal Co.,* 62 Fed. (2d) 906. In all of these cases the corporation has been held liable and its attempt

to avoid liability by transfer of corporate assets to trustees or agents, who completed the sale, was ineffectual. In most of these cases the contention advanced by the taxpayers was to the same effect as that advanced by these petitioners, namely, that a distribution in kind was made by the corporation and the trustees acted for the former stockholders in making the sale. The principal difference lies in the fact that here the corporation is still in the process of liquidation while in the cited cases a contemplated sale was consummated.

In these proceedings the trustee was, in our opinion, acting for the corporation, despite the express disavowal contained in the trust instrument. The trust is not closed until the property is sold, the debts owed to the corporation collected, the debts owed by the corporation paid, and the money distributed among the stockholders. When these events occur a taxable transaction results, from which gain or loss is to be determined. However, testimony at the hearing was positive to the effect that the trustee was still engaged in collecting the debts due the corporation, indicating that liquidation had not yet been completed.

It is our judgment that petitioners have not as yet realized anything from their investment in the Continental Lumber Co. or its predecessors. The transaction resulted in a mere change in the evidence of their ownership. Their rights in the assets held by the trustee were identically the same rights in those assets that were evidenced by shares of stock of the corporation, and neither gain nor loss will result until there has been a final disposition of the liquidation certificates. *Reese Blizzard*, 16 B.T.A. 242.

Reviewed by the Board.

*Decision will be entered for the respondent.*