HATTIE W. MACKAY, EXECUTRIX, ESTATE OF WALTER S. MACKAY, PE-
TITIONER, *v.* COMMISSIONER OF INTERNAL REVENUE, RESPONDENT.

SHIRLAW W. MACKAY, PETITIONER, *v.* COMMISSIONER OF INTERNAL
REVENUE, RESPONDENT.

HATTIE W. MACKAY, PETITIONER, *v.* COMMISSIONER OF INTERNAL
REVENUE, RESPONDENT.

Docket Nos. 56914–56916. Promulgated February 13, 1934.

*William M. Maxwell, Esq.,* for the petitioners.
*Dean P. Kimball, Esq.,* for the respondent.

OPINION.

LANSDON: The real issue here is whether the California Bag & Paper Co. sold both groups of assets in question. If there was such a sale prior to September 14, 1928, the profit realized was that of the corporation, and, added to book surplus as of that date, it was almost sufficient to distribute a dividend out of earnings accumulated after March 1, 1913, as determined by the respondent. The petitioners contend that the corporation declared and distributed a dividend in kind to them, consisting of the group of assets that had a book value of $84,705.31, and that they sold such assets on the next day to St. Helens for $150,000.

Comparison of the diverse contentions of the parties discloses that each is asking us to look through the form of the corporate and other acts by which the assets involved were finally passed to the purchaser for a price agreed to before any procedure to minimize Federal income taxes and to base our conclusions on the substance of what was actually done. The respondent ignores the terms of the resolution of distribution and argues that prior to its adoption by the

directors the group of assets in question had already been sold by the corporation and so were not available for distribution in kind on September 14, 1928. Upon this theory he asks us to determine that dividends in the amount of $150,000 were received by the petitioners and that their ratable parts thereof are taxable at surtax rates provided in the Revenue Act of 1928. To affirm his determination we must hold that the corporation realized a profit from the sale in the amount of the difference between the book value of the assets and $150,000 and that such profit, plus surplus at date of sale, was available for distribution as dividends on September 14, 1928.

It is somewhat difficult to determine the real contentions of the petitioners. They plead (1) that the Commissioner erroneously failed to recognize the distribution of assets of the book value of $84,705.31 as a tax-free distribution of capital under the provisions of section 115 (d) of the Revenue Act of 1928,[1] (2) that he erroneously held that all of such distribution was taxable as dividends, and (3) that he erroneously failed to recognize and adopt the findings of an internal revenue agent allowing an overassessment to each of the petitioners in certain specified amounts. It is perfectly clear that these allegations are inconsistent with the facts relied on by the petitioners. Only one dividend was declared on September 14 and that in terms was the book value of the assets in question in the amount of $84,705.31. On that date the corporation had surplus available for dividends in the amount of $81,697.47 and therefore capital could not have been included in the distribution in excess of $3,007.84. To bring this contention within the provisions upon which they rely the petitioners include appreciation or depreciation reserves in the amount of $65,294.69 and thereby in their view of the facts increase the distribution to $150,000. The resolution, however, provides for the distribution of only $84,705.31, practically all of which could be paid out of surplus. It is clear, therefore, that petitioners are asking us to look through the form of the resolution and determine its real substance as something quite different.

If the terms of the corporate and other acts under review are literally applied, the petitioners received a body of assets as a dividend in kind valued by the resolution at $84,705.31 and on the next day sold the same property for $150,000 and realized a gain, after one day of ownership, in the amount of $65,294.69. It thus appears

---

[1] SEC. 115. (d) *Other distributions from capital.*—If any distribution (not in partial or complete liquidation) made by a corporation to its shareholders is not out of increase in value of property accrued before March 1, 1913, and is not out of earnings or profits, then the amount of such distribution shall be applied against and reduce the basis of the stock provided in section 113, and if in excess of such basis, such excess shall be taxable in the same manner as a gain from the sale or exchange of property. The provisions of this subsection shall also apply to distributions from depletion reserves based on the discovery value of mines.

that petitioners are foreclosed from any attempt to have us hold that the nature of all the transactions of September 14 and 15 is clearly shown by the form thereof, unless they are willing to pay both normal and surtaxes on the profit clearly indicated by the procedure adopted.

The record discloses that negotiations for the sale in question were begun some two months before the corporate and other acts of September 14, 1928. Such negotiations resulted in a complete meeting of the minds of the seller and purchaser. There was an agreement as to price and it was understood that as a matter of form the purchaser would pay $182,125.31 directly to the seller and the remaining $150,000 to the stockholders thereof. On the morning of September 14 it remained only to embody the terms arrived at by negotiation into corporate and other acts necessary to effect the transfer of the assets to the buyer.

The assets sold to St. Helens did not include all the property of the corporation. It retained some valuable real estate and all its accounts receivable. The combined value of the retained property and the selling price of the assets purchased by St. Helens exceeded the cost of all the corporation property by an amount which counsel for petitioners admit was between $60,000 and $70,000. Since there is no evidence on this point, it may have been much more. It was obvious, therefore, that a direct sale would result in a substantial tax liability against the corporation. Admittedly, upon the advice of counsel, the procedure on September 14 and 15 was for the purpose of reducing such liability to a minimum. In *McQueen Co.* v. *Commissioner*, 67 Fed. (2d) 857, the court, in reference to a similar contention but involving the taxability of the profits realized from a sale, said: " Such anticipatory arrangements and contracts, intended to circumvent the taxing statutes, are not looked upon with favor ", and cited *Lucas* v. *Earl*, 281 U.S. 111; and *Phelps* v. *Commissioner*, 54 Fed. (2d) 289; certiorari denied, 285 U.S. 558. It is plain, therefore, that such arrangements must be carefully scrutinized and approved only when their facts show beyond any doubt that the purposes thereof have been legally accomplished. .

In our opinion the plans adopted failed to accomplish their purpose for the reason that all the assets in question had been sold before the alleged distribution. It follows, therefore, that the amount of $150,000 was not in fact received by the stockholders from St. Helens, but from the corporation. On September 14 the corporation had already sold such assets to St. Helens for $150,000 and the distribution in fact was in that amount instead of in the book value of $84,705.31 and included profit from the sale properly chargeable to

surplus in the amount of $65,294.69, which, in addition to the book value of $84,705.31, was at once available for distribution as earnings or surplus accumulated after March 1, 1913. On very similar facts in *Taylor Oil & Gas Co.*, 15 B.T.A. 609, we decided that assets alleged to have been distributed to the stockholders of a corporation in liquidation were in fact sold by the corporation to which the profits of the sale therefrom accrued. This result was affirmed by the United States Circuit Court of Appeals for the Fifth Circuit in *Taylor Oil & Gas Co.* v. *Commissioner*, 47 Fed. (2d) 108; certiorari denied, 283 U.S. 862. See also *Liberty Service Corp.*, 28 B.T.A. 1067; *Fred A. Hellebush*, 24 B.T.A. 660; affd., 65 Fed. (2d) 902; *Northwest Utilities Securities Corp.*, 27 B.T.A. 524; affd., 67 Fed. (2d) 619; *McQueen Co.* v. *Commissioner*, *supra*.

On brief petitioners argue that the cases cited and relied on by the respondent are not in point, since they relate to profits realized by a corporation and taxable to it as such and have no bearing here, where the Commissioner seeks to tax after distribution to the stockholders. This argument is not convincing. In each of the cited cases the question was whether the profit was realized by the corporation or by someone to whom the assets had been transferred in some fashion by the corporation after sale had actually been accomplished. In each instance if the property was actually sold by the corporation the realized profit was an addition to the surplus and available for distribution of dividends. In such a situation it is obvious that the profit realized by the corporation is taxable to it and that distributions of such profit from surplus are taxable to the stockholders at surtax rates as ordinary dividends. On their face the facts here indicate that the distribution of $150,000 was made from surplus and capital in the respective amounts of $146,992.16 and $3,007.84, but, even if section 115 (d) of the Revenue Act of 1928 is applicable to the lesser amount, there is no evidence of the basic cost of the shares of stock which may be reduced to that extent, or that the remaining assets of the corporation were not, in fact, equal to the par value of all its outstanding capital stock.

In addition to their contention as to the nature of the transaction involved, the petitioners also plead that the failure of the Commissioner to approve and adopt the findings of a revenue agent allowing each of them an overpayment of taxes in 1928 was erroneous. This allegation of error is not argued in their brief, but the record does not show that it has been abandoned. It is without merit. *James Couzens*, 11 B.T.A. 1040. The determinations of the respondent are affirmed.

Reviewed by the Board.

*Decision will be entered for the respondent.*