OPINION. Van Fossan, Judge: The first issue presents the question whether the petitioner’s debenture certificates are evidences of indebtedness or of a proprietary stock interest in the corporation. It is a familiar truism in cases of this kind that no universal rule can be laid down to control a decision, but that all facts of record must be considered and given their appropriate respective weight in arriving at a correct conclusion. In Charles L. Huisking & Co., 4 T. C. 595, we set forth some of the factors commonly relied upon to determine the character of the security. They are: The name; maturity date, if any; dependence of annual payments on earnings; the position of the holder as a creditor of the corporation; and the right to participate in management. It is well settled that the name given to the instrument is not conclusive, but it can not be ignored. Together with other indicia, it may he persuasive. Commissioner v. Proctor Shop, Inc., 82 Fed. (2d) 792; Jewel Tea Co. v. United States, 90 Fed. (2d) 451; Kentucky River Coal Corporation, 3 B. T. A. 644; I. Unterberg & Co., 2 B. T. A. 274. Here the security is labeled “debenture certificate” and words common to an evidence of indebtedness are used throughout, such as “acknowledge itself indebted,” “principal,” “interest,” “due date,” “collectible,” “acquired interest,” etc. There.is no question that the nomenclature employed is consonant with the terms of an evidence of indebtedness. A fixed amount to be repaid and a definite maturity date are set forth in the certificate. The payments of “interest” are definitely fixed at an agreed date and are not dependent on earnings. If the “cash position” of the petitioner — not its current earnings — does not warrant such payment, it may defer the payment for four years, but if it is in default after four years the entire principal immediately becomes “due and collectible.” Washmont Corporation v. Hendricksen, 137 Fed. (2d) 306; Commissioner v. O. P. P. Holding Corporation., 76 Fed. (2d) 11, affirming 30 B. T. A. 337. The rights of the debenture holders are subordinate to those of all creditors but are superior to those of the petitioner’s stockholders “with respect to their shares.” The certificates give the holder no share in the corporation’s assets and no share in its net assets upon liquidation. See Commissioner v. O. P. P. Holding Corporation, supra, in which similar facts and the postponement of interest were discussed at length and held not to impair the character of the'debenture bonds as evidences of indebtedness. The fact that the certificate holders had no voting right is not determinative, but it is persuasive. Commissioner v. H. P. Hood & Sons, Inc., 141 Fed. (2d) 467. At the formation of the corporation there was no obligation on the petitioner to issue any definite amount of stock in exchange for the assets received. It had the privilege of determining the character and amount of its securities so exchanged if they were satisfactory to the recipient. The petitioner had the right to replace the stock interest with an evidence of indebtedness, if it so desired. Commissioner v. H. P. Hood & Sons, supra. The petitioner also presented cogent and proper business reasons for creating the debenture certificates. It is not necessary to enumerate or discuss them, since the face of the instrument affords ample ground for our conclusion that the debenture certificates were evidences of indebtedness and not shares of stock. The petitioner is entitled to deduct the sum of $16,200 paid by it as interest on its debenture certificates during the taxable year. In the second issue the petitioner contends that the transactions in which it acquired from B. & G. and T. C. Bacon and Alice C. Bacon farm lands, equipment, sheep, and other property, constituted tax-free transfers, with the result that the bases of the transferors carried over to the petitioner for excess profits tax purposes in computing its invested capital under section 718 (a) (2) of the Internal Kevenue Code. In the notice of deficiency the Commissioner agreed with this view, but by amended answer injected the issue and contends the transaction was not tax-free. The petitioner argues that it obtained a portion of the property from the Bacons individually in a transfer rendered tax-free by section 112 (b) (5) and the remainder thereof from B. & G. in a reorganization, as defined by section 112 (g) (1) (D) and controlled by sections 117 (a) (7) and 112 (b) (4). The transfers of property from the Bacons come precisely within the requirements of section 112 (b) (5).[1] • The assets owned by them, consisting of sheep, equipment, and other personal property, were transferred to the petitioner in exchange for an appropriate amount of its stocks and securities and immediately thereafter the Bacons were in control of the petitioner in substantially the same proportions as their interests in the transferred assets existed prior to the exchange between the corporations. The same stockholders also preserved their same respective interests in the assets through their holding of corporate stock. In Commissioner v. Gilmore's Estate, 130 Fed. (2d) 791, the purpose of the reorganization statute is well set forth as follows: The reorganization provisions were enacted to free from the imposition of an income tax purely “paper profits or losses” wherein there is no realization of gain or loss in the business sense but merely the recasting of'the same interests in a different form, the tax being postponed to a future date when a more tangible gain or loss is realized. In Morley Cypress Trust, Schedule “B”, 3 T. C. 84, we said: The recognized purpose and scheme of the reorganization provisions is to omit from tax a change in form and to postpone the tax until there is a change in substance or a realization in money. In the case at bar, it is clear that all of the actions set forth in the record related to and were integral parts of the single transaction which occurred on or about March 24, 1942. Before that event T. C. Bacon and Alice C. Bacon individually owned assets valued at over $122,000. They, with their son, Clyde R. Bacon, the owner of one share, owned all of the capital stock of B. & G. After the transfers of their own assets and the assets of B. & G. they, as stockholders of the petitioner, owned precisely the same property as they had owned before the transfers. Included therein were the 1,290 bags of beans, etc., which were distributed in kind to them as stockholders of B. & G. Obviously, they were in control of the petitioner corporation and owned its stock in substantially the same proportions as they owned the stock and the individhal assets before the transaction. Thus the “continuity of interest” element is conspicuously present. The petitioner contends that the part B. & G. played in the reorganization plan is fully covered by the appropriate sections of the statute. It says, first, that both the petitioner and B. & G. were parties to the reorganization as defined in section 112 (g) (2) .[2] With this we agree. It then asserts that a reorganization took place as defined in section 112(g) (1) (D). We also agree with this view. The petitioner next contends that section 112 (b) (4) is applicable and controlling. The petitioner issued its stock and securities in exchange for the assets of B. & G., but did not issue them directly to the transferor corporation. The petitioner maintains that the section does not require that the stock and securities must be issued directly to the transferor, but that its terms are satisfied by the issuance to the transferor’s stockholders. It states that this view is supported by the decisions in analogous cases and particularly by the language of section 112 (g) (1) (D), which, it says, contemplates the issuance either to the transferor corporation or to the stockholders. The point relating to section 112 (g) (1) (D) is well made. We see no purpose of including the italicized words in the definition of a reorganization as a transfer by a corporation of all or a part of its assets to another corporation when immediately thereafter “the trans-feror or its shareholders, or both” are in control of the transferor corporation, unless the issuance of the stock involved in the reorganization plan is contemplated and permitted to be made to the stockholders of the transferor, as well as to that corporation itself. We find no case exactly in point, but analogous cases lead to the conclusion that it matters not that stock and securities of the new corporation are issued to either the old corporation or to its stockholders, provided, of course, that all factors of the situation point to reorganization. Under circumstances that are similar to those in the instant case, the Board of Tax Appeals held in Frank Kell, 31 B.T.A. 212, that upon the dissolution of corporations, procured by their stockholders, and the transfer of the corporate assets to another corporation in exchange for the stock of the latter issued to the stockholders, a nontaxable reorganization was accomplished under section 112 (b) (4) of the Revenue Act of 1928. In Morley Cypress Trust, supra, the issue was the taxability of shares in the new corporation in the hands of the stockholders- of the old corporation which had transferred its assets to the new corporation. The stockholders surrendered their shares in the old corporation to it for cancellation. The question for decision was whether the acquisition of the shares of the new corporation was by distribution in liquidation or in a statutory reorganization. We held that a statutory reorganization occurred and that gain should not be recognized under section 112 (b) (3), Revenue Act of 1938. The facts in the case before us differ slightly from those in the Morley Cypress Trust case in that the stockholders of B. & G. agreed to procure the transfer of its assets to the petitioner in consideration of their surrender of their stock in B. & G., but the underlying principle is the same. In Raybestos-Manhattan, Inc. v. United States, 296 U. S. 60, involving stamp taxes on transfers of title to shares of stock or the rights to receive them, the Supreme Court held that the issue of shares by the new corporation, organized to carry out a plan for the consolidation of old corporations, directly to the stockholders of the old corporations was equivalent to a transfer by the corporations to their stockholders of the right of the corporations to receive such shares. In that case also no matei’ial distinction is made between the transfer of stock to the corporation and to its stockholders, provided that the essential elements of a reorganization are present. The respondent’s argument is that the stockholders of B. & G. "constructively received” the assets (transferred to the petitioner) as a liquidating dividend in exchange for the surrender of their B. & G. stock and that then the assets were transferred to the petitioner in exchange for its capital stock and debentures. This hypothesis does violence to the stipulated facts. It also ignores the plan of reorganization established by the record. The respondent summarily asserts that subsections (1), (2), and (4) of section 112 (b) are not applicable, demonstrates that subsections (3) and (6) are likewise inapplicable, and leaves for discussion only subsection (5). He then calls the transaction in substance a transfer of assets by the Bacons to the petitioner and asserts that the basis which the property takes in the hands of the petitioner is the fair market value of the assets on the date of transfer. However, this theory makes separate transactions of one unified plan in order to create as a new basis the fair market value of the assets at the time of the transfer, a basis which must carry over to the petitioner as the basis for computing its excess profits tax and declared value excess profits tax. We believe that the Commissioner’s original view was correct and that the transaction of March 24, 1942, constituted a single plan of reorganization and all component parts thereof must be considered in their relation to each other. All statutory requirements relating to reorganization have been respected and followed and, as we have found, section 112 (b) (4) is applicable to the facts of record. No question has been raised that the transfer of assets by the Bacons to the petitioner is not governed by section 112 (b) (5). Therefore, there was no gain or loss on the exchange of assets of B. & G. to the Bacons individually and consequently fheir cost to the trans-ferors, stipulated to be $514,123.11, is the basis for computing the taxes under discussion. Decision will be entered under Rule 50. SEC. 112. RECOGNITION OP GAIN OR LOSS. (a) General Rule. — upon the sale or exchange of property the entire amount of the gain or loss, determined under section 111, shall be recognized, except as hereinafter provided in this section. (b) Exchanges Solely in Kind.— * * * * * * * (4) Same. — Gain of corporation. — No gain or loss shall be recognized if a corporation a party to a reorganization exchanges property, in pursuance of the plan of reorganization, solely for stock or securities in another corporation a party to the reorganization. (5) Transfer to corporation controlled by transferor. — No gain or loss shall be recognized if property is transferred to a corporation by one or more persons solely in exchange for stock or securities in such corporation, and immediately after the exchange such person or persons are in control of the corporation; but in the case of an exchange by two .or more persons this paragraph shall apply only if the amount of the stock and securities received by each is substantially in proportion to his interest in the property prior to the exchange. Where the transferee assumes a liability of a transferor, or where the property of a transferor is transferred subject to a liability, then for the purpose only of determining whether the amount of stock or securities received by each of the transferors is in the proportion required by this paragraph, the amount of such liability (if under subsection (k) it is not to be considered as “other property or money”) shall be considered as stock or securities received by such transferor. SEC. 112. RECOGNITION OF GAIN OR LOSS. [[Image here]] (g) Definition of Reorganization. — As used in this section (other than subsection (b) (10) and subsection (1) and in section 113 (other than subsection (a) (22))— (1) * * * (D) a transfer by a corporation of all or a part of its assets to another corporation if immediately after the transfer the transferor or its shareholders or both are in control of the corporation to which the assets are transferred, * * * (2) The term “a party to a reorganization” includes a corporation resulting from a reorganization and includes both corporations in the case of a reorganization resulting from the acquisition by one corporation of stock or properties of another.