Roosevelt Hotel, Inc. v. Commissioner.
Roosevelt Hotel, Inc. v. Commissioner
Docket No. 25810.
United States Tax Court
1953 Tax Ct. Memo LEXIS 244; 12 T.C.M. (CCH) 568; T.C.M. (RIA) 53177; May 22, 1953
Sidney U. Hiken, Esq., 231 South LaSalle Street, Chicago, Ill., for the petitioner. Rigmor O. Carlsen, Esq., for the respondent. HARRON Memorandum Findings of Fact and Opinion HARRON, Judge: The Commissioner has determined deficiencies in income and declared value excess profits taxes for 1944 in the respective amounts of $42,210.28 and $4,797.68. The respondent concedes that the petitioner is entitled to a deduction for New York State franchise tax in the amount of $2,427.91. Effect will be given to the concession under Rule 50. The chief question for decision is whether payments on 6 per cent "debentures" which were accrued in the taxable year, in the amount of $125,637.50, constitute interest on indebtedness under section 23 (b) of the Code, or dividends. Findings of Fact
*245 The stipulated facts are found as facts. The stipulation is incorporated herein by reference. The petitioner, a New York corporation, which was organized on February 21, 1934, is engaged in the business of operating The Roosevelt Hotel, hereinafter called the hotel, in New York City. It keeps its books and files its returns on an accrual method of accounting, and on the basis of a calendar year. It filed its returns for 1944 with the collector for the third district of New York. Petitioner was organized to acquire the assets of New York United Hotel, Inc., hereinafter referred to as United Hotel company, or as petitioner's predecessor, pursuant to a plan of reorganization in receivership. The chief asset of petitioner's predecessor was the hotel. The hotel was constructed by petitioner's predecessor in 1924. United Hotel company realized satisfactory earnings from the operation of the hotel in the early years of operation but in 1931, 1932, and 1933 it carried on operations at a deficit, and was in default on payments of various obligations including leasehold rent. A Reorganization Committee prepared a plan of reorganization of United Hotel company in the latter part of 1933, *246 which was approved by the Court of Chancery of Delaware, and by United States District Court for the Southern District of New York in the early part of 1934. Receivers were appointed. The plan of reorganization is incorporated herein by this reference. Petitioner acquired the hotel on March 1, 1934, pursuant to the plan of reorganization. The hotel was constructed on land leased from New York State Realty and Terminal Company, hereinafter referred to as Realty company. The original lease, dated August 1, 1922, was for a period of 21 years, ending on September 1, 1943. The furniture, equipment, and fixtures of the hotel were pledged to Realty company to secure the lease. Realty company advanced $3,000,000 toward the construction of the hotel building. United Hotel company agreed to repay the three million dollars as sinking fund rental. As of December 13, 1933, the net amount unpaid upon the advance was $2,220,000, and $300,000 thereof was in default. Under the lease, United Hotel company was obligated to pay the following: A ground rental of $23,333.33, monthly; a building rental computed with reference to interest on the unpaid balance of the $3,000,000 advanced, which amounted *247 to $12,950 per month as of December 13, 1933; sinking fund rental in reduction of the $3,000,000 of $150,000 per year up to 1935, and of $180,000 per year thereafter; and taxes, water rents, and other charges. As of December 13, 1933, United Hotel company owed Realty company $1,205,449.40, plus $300,000 sinking fund rental. Immediately prior to petitioner's acquisition of the hotel under the plan of reorganization, petitioner's predecessor had outstanding 20-year, 6 per cent Sinking Fund Gold Debentures which were due February 1, 1947, in the face amount of $5,113,500, which amount had been received in cash from the public when the debentures were issued. The outstanding, 20-year debentures were held by 2,806 separate persons, corporations, and firms. The capitalization of petitioner's predecessor corporation, as it existed when the plan of reorganization was approved, and the number of holders of its debentures and stock, were as follows: No. of
Holders
20-year 6% Sinking Fund De-
bentures held by the public
$5,113,500
2,806
7% Cumulative Pfd. Stock,
38,143 1/2 shares, $100 par
val. held by public
3,814,350
992
Common Stock, $1 par val.,
64,710 shares
64,710
1,010
*248 The petitioner was capitalized, pursuant to the requirements of the plan of reorganization, as follows: 10-year 6% Debentures to be dated
2/1/34, authorized issue
$1,500,000
6%, non-cumulative, Pfd. Stock, $100 par val., authorized issue
26,500 shares
2,650,000
Common Stock,$5 par val., author-
ized issue 45,000 shares
225,000
It was estimated when the reorganization plan was adopted and approved that approximately $70,000 of cash would be needed for receivers' and attorneys' fees, printing bills, stamp taxes and other miscellaneous expenses, all of which was to be raised from the sale of 10-year 6% debentures to be issued by petitioner. Under the plan it was contemplated that this cash would be raised by (a) the sale of approximately $19,000 of said new 10-year 6% debentures to the predecessor's preferred stockholders, each holder of 10 shares of the predecessor's preferred stock being entitled to purchase for cash $5 face amount of said debentures and to receive upon surrender of said 10 shares, voting trust certificates for 5 shares of common stock to be issued by petitioner, and (b) the sale approximately $51,000 of said new 10-year 6% debentures to *249 holders of the predecessor's debentures who, under the plan, were entitled to purchase petitioner's 10-year debentures for cash, at the ratio of $10 face amount of new debentures for each $1,000 face value of the predecessor's debentures and to receive, on surrender of the latter, 5 shares of preferred stock to be issued by petitioner and voting trust certificates for 5 shares of common stock to be issued by petitioner. The predecessor's preferred stockholders who did not purchase petitioner's debentures did not participate in the reorganization of the predecessor, i.e., they were wiped out. The predecessor's debenture holders who failed to purchase petitioner's new debentures were not entitled to and did not receive petitioner's preferred stock. The debenture holders of the predecessor who surrendered their debentures without purchasing petitioner's debentures were entitled to and did receive, upon surrender of each $1,000 debenture of the predecessor, a voting trust certificate for 2 1/2 shares of petitioner's common stock. The predecessor's debenture holders who did not participate at all received upon the surrender of their debentures a cash payment of $5 for each $1,000 of the *250 predecessor's debentures. The predecessor's common stock was completely wiped out. If all of the predecessor's debenture holders and preferred stockholders had purchased petitioner's 10-year 6% debentures, as they had the right to do and as was contemplated, all of petitioner's preferred stock would have been issued to the predecessor's debenture holders and voting trust certificates for all of petitioner's common stock would have been issued to the predecessor's debenture holders and preferred stockholders, except that a few shares of common might have been issued to general creditors of the predecessor. Although not expressly covered in the plan of reorganization, the courts having jurisdiction of the reorganization proceedings ordered that the predecessor's debenture holders who did not participate in the plan of reorganization should receive for each $1,000 face amount of the predecessor's debentures a cash payment of $5. Pursuant to the plan of reorganization, there was issued to the New York State Realty and Terminal Company, as landlord, new 10-year 6% debentures in the amount of $1,430,000 for said amount owing to it for rents in arrears and for real estate taxes and *251 other expenses advanced by it. The amount of $2,310 was paid to predecessor's debenture holders pursuant to the courts' orders referred to above. The predecessor's debenture holders and preferred stockholders bought only $26,920 of petitioner's 10-year 6% debentures, and pursuant to the plan of reorganization, the resulting deficiency in the cash requirements of the plan was met by the sale to others of $38,308 of petitioner's 10-year 6% debentures, together with the shares of petitioner's preferred stock and voting trust certificates for petitioner's common stock which the predecessor's debenture holders would have received if they had purchased said additional amount of petitioner's debentures. The following schedule shows how petitioner's 10-year 6% debentures, its noncumulative preferred stock, and its common stock were issued: 6% Non-
Cumulative
Common Stock
10-Year
Preferred
(Voting Trust
6%
Stock
Certificates)
Debentures
No. of Shares
No. of Shares
To predecessor's debenture holders
$ 23,760
11,880
14,641.25
To predecessor's preferred stockholders
3,160
3,160.00
To New York State Realty and Terminal Company
1,430,000
To Voting Trustees and Underwriters
38,308
11,769
23,751.00
Total
$1,495,228
23,649
41,552.25
*252 Of the petitioner's 23,649 shares of preferred stock thus issued, 11,880 ($1,188,000 par value) were issued to 1,117 separate persons, firms or corporations which, immediately prior thereto, held debentures of the predecessor which originally had been sold to the public for $2,376,000. The remaining 11,769 shares ($1,176,900 par value) were issued to parties who acquired them because the predecessor's debenture holders and preferred stockholders failed to furnish all of the funds needed to defray the cash requirements of the predecessor's reorganization plan. Petitioner's preferred stock was entitled to receive, when and as declared by petitioner's board of directors, dividends at the rate of $6 per annum when earned. Said dividends were noncumulative and were to be paid before any dividends could be paid upon or set apart for petitioner's common stock. The preferred stock was redeemable at par plus unpaid dividends which had accrued thereon in the year of retirement. By December 31, 1942, the 10-year 6% debentures issued by petitioner in 1934 to pay the expenses of the predecessor's reorganization, and $1,430,000 of such debentures issued by petitioner in 1934 to the predecessor's *253 landlord for arrearages in rent, real estate tax advances and other advances, had been fully paid, cancelled or otherwise eliminated. The number of shares and par value of petitioner's preferred and common stock outstanding at December 31, 1942 and December 31, 1943 were the same as at May 1, 1934, by which date all of said shares had been issued. No dividends were declared or paid on petitioner's 6% noncumulative preferred stock from the date of issuance up to and including 1944, the taxable year. From 1945 to date dividends have been declared and paid on petitioner's preferred stock, as follows: Amount
Date Declared
Date Paid
Paid
December 7, 1945
January 1, 1946
$9,792.00
June 20, 1946
July 15, 1946
3,553.50
April 21, 1948
June 1, 1948
5,922.00
April 19, 1950
May 15, 1950
4,002.00
Following its original issuance in 1934, sales of petitioner's preferred stock were made in over-the-counter transactions, such sales as were made during 1942 being at prices ranging from 25 cents to 50 cents per share, and during 1943 at prices ranging from 37 1/2 cents to $18.50 a share. The bid and asked prices of petitioner's preferred stock on December 16, 1943, and *254 on April 5, 1944, were as follows: Bid
Asked
December 16, 1943
$16.50
$18.00
April 5, 1944
22.00
No offers to
sell
The petitioner operated at a loss each year from the date it was organized in 1934 to and including the year 1942. By June 3, of 1943, a group of about 35 persons had acquired 14,781.69 shares of petitioner's 23,649 shares of preferred stock then issued and outstanding, and 28,401.56 shares of its 41,552.25 shares of common stock then issued and outstanding. The group paid not in excess of $18.50 per share for the preferred stock it acquired, and not in excess of $1.75 per share for the common stock it acquired. Conrad N. Hilton was elected president of petitioner on June 3, 1943, and has served in that capacity since then. On December 16, 1943, at a regularly constituted meeting of petitioner's Board of Directors, the Board determined by resolution duly adopted, that it would be advisable and for the best interests of petitioner to offer to the holders of its outstanding 6% preferred stock, in exchange therefor, petitioner's 5% income debentures of an equivalent principal amount. This recapitalization plan was expressly made contingent *255 upon (a) acceptance thereof by the holders of not less than two-thirds of petitioner's outstanding preferred stock, (b) the approval and consent thereto of petitioner's landlord, the Trustees of the New York, New Haven and Hartford Railroad Company, and the Directors of the New York Central Railroad Company, (c) execution of a Trust Indenture providing for the issuance of such debentures, with a bank or trust company as trustee, and (d) qualification of said Indenture under the provisions of the Trust Indenture Act of 1939 and the rules and regulations of the Securities and Exchange Commission under that Act. The necessary approvals and consents were duly obtained, the necessary application for qualification under the Trust Indenture Act of 1939 was filed, and the Securities and Exchange Commission duly entered its order qualifying said Trust Indenture as at 4:30 P.M., Eastern War Time, March 22, 1944. By letter dated April 5, 1944, at which time there were 776 separate persons, corporations and firms holding petitioner's preferred stock, petitioner advised its preferred stockholders that petitioner's Board of Directors had been actively considering, for some time, ways of reorganizing *256 the capital structure of the petitioner in a manner which would best serve its business purposes and which would also facilitate payments to holders of petitioner's preferred stock, and the Board had determined upon a plan of recapitalization involving the exchange of petitioner's outstanding 6% preferred stock for debentures. The plan, the terms and conditions of the debentures to be issued, the general provisions of the Indenture executed in connection therewith and the rights of preferred stockholders to accept or reject the offer were summarized and described in the letter. It was also emphasized in the letter that the effect of carrying out the plan would be to convert the stock interest of each holder of petitioner's 6% preferred stock into an indebtedness of the petitioner, giving, subject to the terms of the debentures and the Indenture, the resulting rights of a creditor. More than the required two-thirds of petitioner's preferred stock was tendered by the holders thereof in exchange for petitioner's 5 per cent debentures prior to May 25, 1944, and on that date the first group of such debentures was issued. By October 20, 1944, over $2,150,000 face value of such debentures *257 had been issued by petitioner in exchange for an equivalent par amount of its 6% preferred stock to 585 persons, corporations and firms theretofore holding such preferred stock. When issued, the debentures were recorded on petitioner's books, as indebtedness. Its preferred stock was cancelled by the petitioner as received, and that stock was not reissued. On December 31, 1944, there still remained outstanding $188,200 par value of petitioner's 6% preferred stock which had not been tendered by the holders thereof in exchange for petitioner's debentures. After 1944, preferred stock was exchanged for the debentures, and at the end of 1949, the outstanding preferred stock amounted to $62,000. The amount of petitioner's outstanding common stock has remained constant since the date it was issued. The 5 per cent debentures were issued as of November 1, 1943, in denominations of $1,000, $500 and $100, numbered respectively M-1 and upwards, D-1 and upwards and C-1 and upwards; they were signed by a vice president and attested by an assistant secretary of the petitioner; the latter's corporate seal is imprinted on each debenture; each debenture contains a signed certification of the Indenture *258 Trustee that the debenture is one of those described in said Indenture; the debentures contain a schedule for recording transfer data. The provisions of the debenture are incorporated herein by reference. The debentures are entitled: "ROOSEVELT HOTEL, INC. 5% SUBORDINATED INCOME DEBENTURE DUE MAY 1, 1964" Under the terms of the debenture, the petitioner agreed as follows, inter alia: "ROOSEVELT HOTEL, INC., a New York corporation (hereinafter called the 'Company'), for value received hereby promises to pay to the registered holder hereof on the first day of May, 1964, the sum of "ONE THOUSAND DOLLARS "($1,000) in any coin or currency of the United States of America which at the time of payment is legal tender for the payment of public and private debts." The debentures were issued pursuant to the terms of a Trust Indenture executed by the petitioner and American National Bank and Trust Company of Chicago, as trustee. It is provided in the Indenture that the debentures are to be issued as fully registered debentures. The Indenture is incorporated herein by this reference. In addition to that which has been set forth above, the debentures contained, among other provisions, *259 the following office of the trustee, interest to be paid at the rate of 5 per cent on May 1 and November 1 of each year; interest is payable only out of the net income of the petitioner, as defined, for the six months preceding each interest date; and payment of interest which under the terms of the debenture shall be "postponed" shall be designated "accrued interest"; "accrued interest" shall be paid upon the final maturity of a debenture; petitioner may make payment of "accrued interest" prior to the maturity date of the debentures; all "accrued interest" shall in any event be paid upon the final maturity of the debentures or upon the prior payment of the principal of the debentures. The debentures are redeemable prior to maturity either at the election of petitioner or through the operation of the sinking fund, as a whole or in part by lot at a price equal to the principal amount of debentures plus interest. In the event of default, as defined in the Indenture, the principal of a debenture and of all other debentures shall become due and payable. The debentures, both as to principal and interest, shall be subordinate to the indebtedness of the petitioner, both existing and future *260 indebtedness, incurred in the operation of the hotel, and for rentals, taxes, insurance, and similar indebtedness which are designated as Superior Indebtedness. The maturity of the debentures cannot be extended, and the rate of interest and the principal amount of a debenture cannot be reduced. The Indenture makes provision for a sinking fund in which petitioner is to place, on April 1 of each year, 25 per cent of its net income for the preceding year ended December 31. The sinking fund payment is waived if the working capital requirement, as defined in the Indenture, is not sufficient. Outstanding debentures can be purchased by the trustee at an amount not to exceed 100 per cent of the principal amount, plus accrued interest, plus the last interest payment due to the date of purchase. The trustee or the petitioner can redeem bonds by lot to the extent allowed by the sinking fund provisions. All debentures redeemed shall be cancelled. Holders of the 5 per cent income debentures do not have any right to participate in the management of petitioner under any circumstances, and they do not have any voting rights. Net income of the petitioner, out of which interest on the debentures *261 is payable, is defined in the Indenture by specific terms leaving no discretion to anyone. The principal of the debentures is payable unconditionally. Petitioner's debentures, preferred stock, and common stock have been separately traded and dealt in on the over-the-counter market since May 25, 1944, in the volume shown in the following schedule: Debentures
From To *
Preferred Stock
From To *
1944
Face Amount
Holders
Par Value
Holders
June
$295,200
19
83
$29,550
15
8
July
181,500
34
77
6,500
8
8
August
199,500
37
68
4,250
5
5
Sept.-Dec.
515,000
6,750
The following are the high and low bids made in the open market for petitioner's debentures and stock during the years stated: 5% Debentures
Preferred Stock
Common Stock
Year
High
Low
High
Low
High
Low
1944
47 1/2
35
48
20
8 1/2
1
1945
63
47
60
45
13 1/2
6
1946
83 1/2
60
82 1/2
60
27
10
1947
67 1/2
53
63 1/2
55
9 1/2
7
1948
65
53
65
53
8 1/4
5 1/2
1949
57
48
57
48
8 1/4
4 1/2
*262 Petitioner paid, on November 1, 1944, the full amount of interest then due and owing on its outstanding 5 per cent debentures, and has at all times since that date met all interest payments in full on the interest due dates, and has complied with and fulfilled all of its debenture sinking fund obligations. The amount paid by petitioner, as interest, on its 5 per cent subordinated income debentures for each of the years 1945 to 1949, inclusive, was not less than $104,000. Petitioner deducted on its 1944 income and declared value excess-profits tax return as interest accrued during said year on its 5 per cent debentures, the amount of $125,637.50. The deduction was disallowed by respondent, with the following explanation.. "Amount paid as interest on debenture bonds disallowed as more properly representing dividends and, so, not an allowable deduction." The debentures here involved constituted indebtedness of the petitioner, and the amount in question, $125,637.50, constituted interest accrued on indebtedness in the taxable year. Opinion The underlying question for decision is whether the 5 per cent subordinated income debentures represent indebtedness of petitioner or merely *263 evidence ownership of stock. The petitioner contends that the debentures constitute indebtedness and that the interest thereon which it accrued in the taxable year constituted interest within section 23 (b) of the Code and, therefore, is deductible. There are several factors to be considered in determining whether a security is evidence of indebtedness or is stock. John Kelley Co., 1 T.C. 457, 462, aff'd 326 U.S. 521. The debentures involved in this proceeding have many factors which establish that they evidence a debtor-creditor relationship. They are issued in registered form. The principal amount is payable unqualifiedly. The maturity date cannot be extended, and there is a fixed maturity date. The payment of interest, if earned, does not depend upon anyone's discretion, and the determination of whether petitioner realizes earnings is controlled by specific provisions in the Indenture and is not subject to anyone's discretion. The holders of the debentures, as such, do not have any voice in the management of petitioner. There is a sinking fund provision for the debentures, and they are secured by a Trust Indenture. The holders of the debentures have a *264 right to have a receiver appointed for petitioner if interest is earned and not paid. The intention of the parties in the exchange of preferred stock for the debentures was that the holders of the debentures would become creditors. The petitioner's preferred and common stock before the exchange, and its preferred and common stock and debentures after the exchange were widely distributed. It is noted, also, that more than 50 per cent of the 5 per cent debentures, those in question, were issued in exchange for preferred stock which stock had been issued in exchange for earlier debentures that had been bought for cash. This fact is entitled to receive consideration in weighing the factor that the debentures were exchanged for preferred stock. See, New England Lime Company, 13 T.C. 799. The fact that the debentures were issued in exchange for preferred stock, a factor which respondent attacks as unfavorable to petitioner, does not compel a conclusion that they do not constitute indebtedness. See, Lansing Community Hotel Corp., 14 T.C. 183, aff'd 187 Fed. (2d) 487, in which respondent has now acquiesced, 1952-1 C.B. 3. See, also, the *265 following: Commissioner v. H. P. Hood & Sons, Inc., 141 Fed. (2d) 467; Commissioner v. J. N. Bray Co., 126 Fed. (2d) 612; Toledo Blade Co., 11 T.C. 1079, aff'd on another issue, 180 Fed. (2d) 357; John Kelley Co., supra. The debenture do not lose the status of evidencing indebtedness because of the subordination factor. Commissioner v. O.P.P. Holding Corp., 76 Fed. (2d) 11; The Bowersock Mills & Power Co. v. Commissioner, 172 Fed. (2d) 904; Clyde Bacon, Inc., 4 T.C. 1107; Commissioner v. H. P. Hood & Sons, Inc., supra. The factors which support the petitioner's contention are in a preponderance, and there is substantial support for petitioner's position in the authorities above cited. It is held, therefore, that the debentures constitute indebtedness, and that petitioner is entitled to deduct the interest which it accrued in the taxable year under section 23 (b) of the Code. See, also, Sabine Royalty Corporation, 17 T.C. 1071. A recomputation will be necessary because of certain undisputed adjustments. Decision will be entered under Rule 50. Footnotes
*. "From" signifies the number of separate individual transferors; "To" the number of separate individuals to whom the transfers were made.↩