United Theatres, Inc. v. Commissioner.
United Theatres, Inc. v. Commissioner
Docket Nos. 21749, 22538.
United States Tax Court
1953 Tax Ct. Memo LEXIS 183; 12 T.C.M. (CCH) 750; T.C.M. (RIA) 53238; June 30, 1953
Gibbons Burke, Esq., 1801 Hibernia Bank Building, New Orleans 12, La., for the petitioner. Allen T. Akin, Esq., for the respondent. HARRON Memorandum Findings of Fact and Opinion HARRON, Judge: The Commissioner has determined deficiencies for the years 1941 through 1945 in income tax, declared value excess profits tax, and excess profits tax as follows: Declared
Value
Excess
Excess
Year
Income Tax
Profits Tax
Profits Tax
1941
$29,386.61
$ 248.81
0
1942
27,925.48
0
$36,952.54
1943
27,787.03
1,780.99
36,268.59
1944
38,393.05
0
22,324.63
1945
27,689.38
0
18,677.41
The petitioner concedes that it realized long-term capital gain in 1944 in the amount of $42,694.19. The respondent recedes from a determination made for 1945 (Docket *184 No. 22538) and concedes that petitioner is entitled to a $10,000 deduction in 1945. Effect will be given to the respondent's concession in Docket No. 22538 under Rule 50. During 1941, the first taxable year in these proceedings, the petitioner called in outstanding 7 per cent preferred stock redeemable at $100 per share, and issued in exchange an equal amount of 7 per cent "Income Debentures," in denominations of $100, or multiples thereof. The only question is whether "interest" payments made out of earnings on the bonds during the years 1941 to 1945, inclusive, are deductible as interest under section 23 (b) of the Internal Revenue Code. The respondent has determined that the payments were in the nature of dividends, distributions out of earnings or profits of the taxable years, and has disallowed the claimed deductions for interest. The explanation of the respondent for his determination in each year is set forth in the margin. [1]
*185 The petitioner filed its returns with the collector for the district of Louisiana. Findings of Fact The facts which have been stipulated are found as facts. The stipulation is incorporated herein by this reference. Petitioner is a Louisiana corporation which was organized on September 27, 1929. In 1930, petitioner issued and sold to the general public for cash, $450,000 First Mortgage 6 1/2 per cent Serial Gold Bonds, due from December 1, 1930, to June 1, 1940. The cash realized was used to provide for modernizing petitioner's property, to fund its debts, and to provide working capital. Before December 1, 1936, $134,500 of bonds had been retired; and on December 1, 1936, the remainder, $315,000, were retired. On October 15, 1930, there were outstanding 13,693 shares of preferred stock and 45,732 shares of common stock. Of this stock, 315 shares of preferred and 318 shares of common were owned by N. I. Ehrlich, a director; and 212 shares of preferred and 205 shares of common were owned by J. G. Zibilich, a director. The rest of each class of stock, 9,708 shares of preferred and 35,887 shares of common were held by trustees or holding companies of E. V. Richards, Jr., president; *186 M. H. Jacobs, vice-president; Phil Foto, vice-president; V. C. Howard, treasurer; Edward Ludman, secretary; H. K. Oliphant, assistant secretary; N. Sobel, director. As of March 31, 1941, the common stockholders were substantially the same as they were on October 15, 1930, except that M. J. Jacobs, Inc., a holding company for M. H. Jacobs had 1, 172 shares less, and that number of shares was owned by Leon Rich. As of March 30, 1941, the preferred stockholders were substantially the same as they were on October 15, 1930. There was some shifting of small lots of preferred stock so as to increase the holdings of a shareholder or decrease the holdings of another shareholder. E. V. Richards, Jr., president, before March 31, 1941, transferred by sale or gift to two trusts which he created for the benefit of his nine children 5,744 shares of common and 1,322 shares of preferred stock. Also, before March 31, 1941, 5,744 shares of common and 1,266 shares of preferred stock of petitioner, held by N.S., Inc., on October 15, 1930, a holding company, were transferred to N. Sobel, and to his daughters and granddaughters, by gift, death of wife, and upon liquidation of N.S., Inc. Between October 15, 1930, and *187 March 31, 1941, 1,746 shares of preferred stock were retired, so that on March 31, 1941, the outstanding stock of petitioner consisted of 11,947 shares of preferred stock, and 45,732 shares of common stock. On April 24, 1941, but as of April 1, 1941, petitioner executed its Indenture to secure an issue of 7 per cent income debentures dated April 1, 1941, due March 31, 1961. On April 24, 1941, by corporate resolution, authorization was given to call in the 11,947 shares of preferred stock and to issue in exchange therefor, 7 per cent income debentures on the basis of $100 of debentures for each share of preferred stock. Petitioner's charter was amended to carry out the resolution, to provide that there would be only one class of no par value stock, and to reduce petitioner's capital stock to 50,000 shares without par value. As of April 1, 1941, 11,947 shares of preferred stock were exchanged for income debentures in the face amount of $1,194,700. As of April 1, 1941, the holders of the debentures transferred them to E. V. Richards, president, and M. H. Jacobs, vice-president, as voting trustees under a voting trust agreement dated April 1, 1941, in exchange for an equal amount *188 of voting trust certificates. It was provided in the Indenture under which the bonds were issued, inter alia, as follows: that interest was payable on March 31 and January 1 of each year out of the net earnings for the fiscal year, and that no dividends on common stock could be paid unless interest accruing on the debentures was provided for, or was paid; that the directors would determine net earnings and make provision for the payment of interest; that if default of the petitioner in determining the amount of net earnings available for interest on the debentures, or in providing for the payment of interest should occur and continue for 15 days, the trustees could, in their discretion, or upon written consent of owners of 25 per cent principal amount of debentures outstanding, declare the principal of the debentures immediately due and payable. From 1930 through 1945, petitioner made payments of interest and dividends as follows: Interest on
Payments on
Dividend Payments
Year
1st Mtge. Bonds
Debentures
Preferred
Common
1930
$14,625.00
$ 92,928.50
1931
27,673.76
82,250.87
1932
25,609.95
103,667.37
1933
24,375.00
46,088.00
1934
23,107.51
103,698.00
1935
21,612.50
80,654.00
1936
13,874.28
90,083.00
$36,585.60
1937
88,767.00
38,872.20
1938
87,801.00
1939
86,774.71
1940
85,729.00
9,146.40
1941
$64,330.00
21,113.75
91,464.00
1942
83,608.00
91,464.00
1943
83,203.55
80,031.00
1944
83,022.15
80,031.00
1945
82,918.79
54,878.40
*189 The debentures here involved constituted indebtedness of the petitioner, and the amounts paid on the debentures in the taxable years as interest constituted interest paid on indebtedness. Opinion The underlying question is whether the income debentures represent indebtedness of petitioner or merely evidence ownership of stock. The petitioner contends that the debentures constitute indebtedness and that the interest thereon constituted interest within section 23 (b) of the Code, and, therefore, is deductible. The petitioner relies solely upon Commissioner v. J. N. Bray Co., 126 Fed. (2d) 612 (C.A. 5, 1942). No single factor is controlling in determining whether a certain security is in fact evidence of indebtedness or a form of capital stock. John Kelley Co., 1 T.C. 457, 462, affd., 326 U.S. 521; New England Lime Company, 13 T.C. 799. The fact that the debentures were issued in exchange for outstanding preferred stock does not compel a conclusion that they do not constitute indebtedness. Lansing Community Hotel Corp., 14 T.C. 183, affd. 187 Fed. (2d) 487, in which respondent has now acquiesced, *190 1952-1 C.B. 3. See, also, the following: Commissioner v. H. P. Hood & Sons, Inc., 141 Fed. (2d) 467; Commissioner v. J. N. Bray Co., 126 Fed. (2d) 612; Toledo Blade Co., 11 T.C. 1079, affd. on another issue, 180 Fed. (2d) 357; John Kelley Co., supra.Commissioner v. O. P. P. Holding Corp., 76 Fed. (2d) 11; The Bowersock Mills & Power Co., v. Commissioner, 172 Fed. (2d) 904; Clyde Bacon, Inc., 4 T.C. 1107; Commissioner v. H. P. Hood & Sons, Inc., supra. The factors which support the petitioner's contention are in a preponderance, and there is substantial support for petitioner's position in the authorities above cited. It is held, therefore, that the debentures constitute indebtedness, and that petitioner is entitled to deduct the interest which it paid in the taxable year under section 23 (b) of the Code. See, also, Sabine Royalty Corporation, 17 T.C. 1071; and Commissioner v. J. N. Bray Co., supra. A recomputation will be necessary because of certain undisputed adjustments. Decisions will be entered under Rule 50. Footnotes
1. The sums paid and claimed as "interest" on your issue of Seven Per Cent (7%) Income Debentures issued April 1, 1941 in a purported recapitalization have been disallowed as a deduction from gross income since it is held that such payments were in the nature of dividends (a distribution out of earnings or profits of the taxable year), rather than "interest," in view of the provisions of the voting trust certificates for debentures, the voting trust agreement and underlying indenture. It is also held that the issuance of the "debentures" was not for a legitimate readjustment of your financial structure or corporate business purpose germane to the ordinary and necessary incidents of the conduct and continuation of your corporation, but instead merely represented the recasting of a continuing capital investment or proprietary interest in the business rather than an indebtedness within the meaning of section 23 (b) of the Internal Revenue Code↩.